UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NUA GJOKAJ,

                Plaintiff,

v.                                    Civil Case No. 14-14151
                                    Honorable Linda V. Parker

UNITED STATES STEEL
CORPORATION,

                Defendant.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL

On October 28, 2014, Plaintiff Nua Gjokaj ("Gjokaj") initiated this lawsuit against his former employer, United States Steel Corporation ("USS"), alleging disability discrimination in violation of federal and Michigan law, interference with his rights and denial of leave under the federal Family Medical Leave Act ("FMLA"), and retaliation in violation of the Michigan Worker's Disability Compensation Act ("WDCA"). Presently before the Court is Gjokaj's motion to compel discovery, filed April 13, 2015. The motion has been fully briefed. For the reasons that follow, the Court grants in part and denies in part Gjokaj's motion.

I.      **Factual and Procedural Background**

Gjokaj began his employment with USS in June 2011.  (ECF No. 1 ¶ 7.)  On November 29, 2011, Gjokaj was injured at work and suffered herniated disks at L3-L4 and L4-L5.  (*Id*. ¶ 9.)  He was given a lifting restriction for the remainder of his employment with USS.  (*Id*. ¶ 10.)

On July 24, 2013, Gjokaj suffered an injury to his finger while working at USS's Ecorse, Michigan facility, and he asked that EMS be called.  (*Id*. ¶¶ 15, 16, 22.)  Gjokaj was treated at Henry Ford Wyandotte Hospital, where he was diagnosed with "pain, partial amputation of third digit" and "comminuted fracture of third distal phalanx tuft, foreign body in soft tissue."  (*Id*. ¶ 20.)  Gjokaj was prescribed medications and advised to follow up with an orthopedic surgeon.  (*Id*. ¶ 21.)

After being released from the hospital, Gjokaj was brought back to the Ecorse facility, at which time USS demanded that he speak to someone in the medical department.  (*Id*. ¶ 23.)  A USS nurse set up an appointment for Gjokaj to return to the plant to see a doctor at 7:00 a.m. the next morning which, by then, was only ten hours away.  (*Id*. ¶ 24.)  Gjokaj asked that he be excused from returning to the plant the next day and that he be permitted to see a doctor closer to his home, which was an hour drive from the plant.  (*Id*. ¶¶ 25, 26.)  USS demanded that Gjokaj see its designated doctor.  (*Id*. ¶ 27.)  Gjokaj claims that, but for the

interference of USS, he could have obtained a certification from his doctor for a leave of absence qualifying under the FMLA.

According to the Complaint, on July 25, 2013, without ever examining Gjokaj, USS's plant medical doctor determined that Gjokaj was cleared to "do one-handed or sedentary work at the training center."  (*Id*. ¶ 30.)  The plant doctor also indicated that Gjokaj refused to be treated at the facility's clinic.  (*Id*. ¶ 31.)  On July 26, 2013, the USS Plant Medical nurse reported that the bone in Gjokaj's finger was not amputated and that, contrary to doctors' notes, he "was completely capable of doing one-handed work at any time post injury[,] just caught the tip of one finger in a cylinder."  (*Id*. ¶ 38.)

On July 26, 2013, Gjokaj was written up for allegedly "misrepresenting his physical condition."  (*Id*. ¶ 40.)  His employment was terminated on the same date. (*Id*. ¶ 41.)  This lawsuit followed.

In January 2015, Gjokaj served USS with a set of Interrogatories.  In Interrogatory No. 8, Gjokaj asks USS to "[l]ist every complaint of discrimination (including a failure to accommodate a disability) by USS employees since 2008[.]" (ECF No. 13, Ex. A.)  USS is asked in the interrogatory to provide the following information with respect to any complaint:

    a. Name;
    b. Last known contact information;
    c. Whether the employee remains employed;
    d. Date or approximate date of complaint;

> e. The entity to which the complaint was made, e.g. USS , EEOC,
> MDCR, court, arbitrator, etc., including location;
> f. A description of the claim including case number or file number; …
> g. The outcome of the claim, e.g. pending, resolved[; and]
> h. Name of the USS employee or agent most knowledgeable regarding
> the complaint.

(*Id.*)  USS objected to Interrogatory No. 8.  In response, Gjokaj's counsel agreed to limit the request to a timespan of 2010 to the present and the geography to Great Lakes Works.[1]  USS seeks to limit the request further, however, to the corporate Labor Relations "decision-makers" in this case and to complaints of disability discrimination, only.  USS has advised Gjokaj's counsel that it also believes its responses should be limited to complaints that reached the administrative stage.

USS also has demanded a protective order as a condition to responding to Gjokaj's Interrogatories.  Counsel for USS sent a proposed protective order to Gjokaj's counsel, who responded with changes.  USS's counsel accepted some of the changes, but not all.  At issue are paragraphs 7 and 8.  (*See* ECF No. 13, Ex. B.)

Paragraph 7, as proposed by USS, reads:

> Whenever a party objects to the designation of a document as
> confidential, counsel for the objecting party shall so notify counsel for
> the designating party.  Within ten (10) business days of such
> notification, counsel for the objecting and designating parties shall
> confer in good faith in an effort to resolve the matter by agreement.  If

---

[1] Great Lakes Works is one of USS's facilities in Ecorse, Michigan. *See* www.ussteel.com/uss/portal/home/aboutus/facilities.  The Court presumes that this is the facility where Gjokaj worked.

4

agreement is not reached, the objecting party may apply to the Court for a ruling that the document shall not be treated as confidential, giving notice to the party producing the document.  Until this Court enters an Order changing the designation, the document shall be given the confidential treatment initially assigned to it and provided for it in this Order.

(*Id*. ¶ 7.)  The proposed protective order provides *inter alia* that confidential documents "shall be used solely for the prosecution or defense of this action and shall not be used in any other litigation or any other judicial or administrative proceeding" and limits to whom the document or information contained therein may be disclosed.  (*Id*. ¶¶ 2, 3.)

Paragraph 8 of USS's proposed protective order addresses the use in the present proceedings of any documents or information covered by the order.  (*Id*. ¶ 8.)  Gjokaj's counsel has sought to delete the following language from this paragraph:

In the event that a party intends to include any documents or information designated by the other party as confidential and subject to the Protective Order in any affidavits, briefs, memoranda of law or other papers filed in Court in this litigation, the parties agree to abide by the following procedure:

a.   Counsel for the party that intends to use the documents or information shall serve notice, via facsimile or e-mail, on counsel for all other parties ten (10) days in advance of the intended use.

b.   Counsel for all other party [sic] shall have three (3) business days from receipt of such notice to serve, via facsimile or e-mail, a written objection to the intended use on all other parties.

5

>    If an objection is timely served, the parties shall confer in good
>    faith to resolve the objection with [sic] resort to filing a motion.

>    c.    If the parties cannot resolve any objection amongst themselves,
>          the documents or information shall remain confidential until a
>          motion is file and there is a further order from the Court.

(*Id.*)

Unable to resolve their disputes concerning Gjokaj's Interrogatory No. 8 and

paragraphs 7 and 8 of USS's proposed protective order, Gjokaj filed the instant

motion to compel.

## II.    Applicable Law & Analysis

Rule 26(b)(1) of the Federal Rules of Civil Procedure governs the scope and

limits of discovery and provides in pertinent part:

>    Parties may obtain discovery regarding any nonprivileged matter that
>    is relevant to any party's claim or defense . . . Relevant information
>    need not be admissible at the trial if the discovery appears reasonably
>    calculated to lead to the discovery of admissible evidence.  All
>    discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Rule 26(b)(2)(C) requires a court to limit the frequency or extent of discovery if:

>    (i) the discovery sought is unreasonably cumulative or duplicative, or
>    can be obtained from some other source that is more convenient, less
>    burdensome, or less expensive;

>    (ii) the party seeking discovery has had ample opportunity to obtain
>    the information by discovery in the action; or

>    (iii) the burden or expense of the proposed discovery outweighs its
>    likely benefit, considering the needs of the case, the amount in
>    controversy, the parties' resources, the importance of the issues at

6

stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).  In cases involving allegations of discrimination-- including the cases cited by both parties here-- courts have permitted the plaintiffs to seek discovery of past acts of discrimination by the defendants.  *See, e.g., Mitchell v. Nat'l R.R. Passenger Corp.*, 208 F.R.D. 455, 459 (D.D.C. 2002) (indicating that "plaintiffs have a right to seek discovery on similarly motivated discriminatory acts if it likely that a finder of fact would conclude that those other acts are probative of the intention or motivation of which the plaintiff has complained"); *Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 58 (D.N.J. 1985); *United States v. Univ. of Nebraska at Kearney*, No. 4:11CV3209, 2014 U.S. Dist. LEXIS 118073, at **10-11 (D. Neb. Aug. 25, 2014) (citing cases); *Marchese v. Sec'y of the Dep't of the Interior*, No. 03-3082, 2004 U.S. Dist. LEXIS 20680, at *4 (E.D. La. Oct. 12, 2004) ("Evidence of other wrongs or acts may be admissible to prove, for example, defendant's motive, intent, plan, knowledge or absence of mistake in an employment discrimination case.").  The same courts, however, have also placed limits on the scope of that discovery.  Consistent with these decisions, USS is not disputing Gjokaj's right to seek the discovery in Interrogatory No. 8. USS is only disputing the scope of that discovery.

Gjokaj has agreed to limit the geography of his request to the facility where he worked and the timespan to the period between 2010 and the present.  USS

7

seeks to limit the timeframe further, from 2010 until the date Gjokaj's discharge became final.  The Court finds the scope of Gjokaj's request in this regard to be reasonable.  *See Childers v. Slater*, 1998 WL 429849, at *5 (D.D.C. May 15, 1998) (allowing for discovery within a time frame not to exceed a ten-year period); *Robbins*, 105 F.R.D. at 63 (finding seven year period, including two years beyond the plaintiff's termination, reasonable); *see also Robbins*, 105 F.R.D. at 62-63 (recognizing that "[c]ourts have commonly extended the scope of discovery to a reasonable number of years prior to the defendant's alleged illegal action[]" and "have also permitted discovery for periods after the alleged discrimination.") (emphasis removed).  At most, Gjokaj's request covers only a four-year time frame.

USS also seeks to limit Gjokaj's request to those individuals who USS claims were the "decision-makers" in his case, to complaints only of disability discrimination, and to complaints that reached the administrative stage.  The first limitation is not reasonable, as there is not a consensus as to who the relevant decision-makers were and individuals other than the ultimate decision-maker appear to have been involved in the alleged illegal conduct.  Moreover, Gjokaj should be able to seek information concerning instances of discrimination by individuals other than the decision-makers involved in Gjokaj's case, as courts have held that evidence of a "corporate state-of-mind at the time of termination"

8

may sometimes be relevant. *Cummings v. Std. Register Co.*, 265 F.3d 56, 63 (1st Cir. 2001); *see also Conway v. Electro Switch Corp.*, 825 F.2d 593, 597 (1st Cir. 1987) (recognizing that "circumstantial evidence of a discriminatory atmosphere at a plaintiff's place of employment is relevant to the question of motive in considering a discrimination claim. While evidence of a discriminatory atmosphere may not be conclusive proof of discrimination against an individual plaintiff, such evidence does tend to add 'color' to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff."); *see also Schrack v. RNL Carriers, Inc.*, 565 F. App'x 441, 444 (6th Cir. 2014) (citing cases finding evidence of a discriminatory environment admissible and indicating that the admission of such evidence must be evaluated on a case-by-case basis).

The Court declines to limit Interrogatory No. 8 to only those complaints of discrimination that reached the administrative level. Gjokaj should be able to uncover internal complaints even if the alleged victim decided not to file a complaint with the Equal Employment Opportunity Commission or some other agency. The Court doubts that Gjokaj is seeking discovery of every verbal or informal "complaint" of discrimination. Rather, and what is reasonable, is a request for complaints submitted in accordance with USS' procedures for

9

employees to internally raise such complaints (as well as any complaints filed externally with an agency or court).

The Court does agree that Gjokaj's request should be limited to disability discrimination.  Charges made by other employees about discriminatory conduct other than disability discrimination are not likely relevant to Gjokaj's claims of disability discrimination and interference with his FMLA rights and denial of leave.  None of the cases cited by the parties suggest otherwise.  Discrimination against one class of persons is not likely evidence of a discriminatory intent against persons of another class.

In his reply brief, Gjokaj contends that "[t]he relevance of how the employer treats employees who asserts [sic] their rights cuts across all the protected classes. Retaliation is not a protected-class-specific phenomenon."  (ECF No. 15 at 4.)  The Court would agree that complaints of retaliation might be relevant if Gjokaj was claiming retaliation for filing a charge of discrimination.  He, however, is claiming retaliation for the exercise of his rights under the WDCA.  Specifically, he claims that USS retaliated against him for seeking and obtaining compensation under the WDCA for his back injury and seeking medical treatment for his work-related finger injury.  (*See* ECF No. 1 at ¶¶ 78-81.)  Thus the Court finds that Interrogatory No. 8 should be limited to other complaints of disability discrimination or retaliation, only.

Turning to the protective order, the Court believes that the party objecting to the designation of a document as "confidential" should bear the burden of raising an objection and, if not resolved, seeking the Court's involvement to resolve the dispute.  Thus the Court rejects Gjokaj's objection to paragraph 7 of USS's proposed protective order.  The Court advises the parties, however, that because the protective order clearly defines what documents are to be deemed "confidential", allows for the use of confidential documents for purposes of this litigation, and simply restricts to whom such documents may be disseminated, it expects that no disputes as to the identification of a document as confidential will need to reach the Court's attention.  Thus, the Court is requiring that the protective order include language stating that, if a motion is filed asking the Court to resolve a dispute concerning the designation of a document as confidential, the losing party shall pay the other party's attorney fees in relation to the motion.

The Court does not believe that a party should have to notify the opposing party of its intent to use a confidential document in this litigation prior to its use, as provided for in paragraph 8 of USS's proposed protective order.  To the extent this paragraph is intended to protect the confidentiality of such documents when used in affidavits, briefs, memoranda of law or other papers filed with the Court, the proper procedure is to file the document under seal.  The Court thus concludes that the language in paragraph 8 to which Gjokaj objects should be stricken.

11

## III.    Conclusion

In summary, the Court concludes that Gjokaj's Interrogatory No. 8 should be limited to complaints of disability discrimination or retaliation by employees at the Great Lakes Works facility between 2010 and the present.  USS is compelled to respond to Interrogatory No. 8, with these restrictions, within twenty-eight (28) days of this Opinion and Order.  The Court rejects Gjokaj's objections with respect to paragraph 7 of the proposed protective order, but agrees with its objections to paragraph 8.  Further, in the protective order submitted for the Court's approval and signature, the parties shall include the language regarding sanctions identified above in paragraph 7.  As such, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion to compel.

**SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: May 22, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, May 22, 2015, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager